# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>)<br>) Case No. 2:06CR00011<br>) |
| v. | ) **OPINION AND ORDER**<br>) |
| **MARC MARK GAGNON,** | ) By: James P. Jones<br>) United States District Judge |
| Defendant. | ) |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy C. Dickenson, Assistant Federal Public Defender, Abingdon, Virginia, for Marc Mark Gagnon.*

Marc Mark Gagnon, who is subject to conditions imposed by this court following his release from civil commitment, has moved to remove or modify those conditions. Following a hearing and for the reasons set forth hereafter, his request will be denied.

I.

Gagnon, now thirty-eight years old, has a long history of mental illness. He was diagnosed with schizophrenia at the age of eighteen. In 2005 he became obsessed with a well-known actress. He wrote a series of letters to the actress and her husband, threatening to kill them unless they divorced. After he made these threats, he left his home to drive to New York City, where the actress was performing. En route, he had a serious car accident in this district and while

hospitalized, his prior obsession and threats became known to the authorities, and he was arrested and subsequently charged in this court with interstate stalking in violation of 18 U.S.C. § 2261A. On December 12, 2006, the court found Gagnon not guilty solely by reason of insanity. He was thereafter civilly committed pursuant to 18 U.S.C. § 4243(e).

Following a hearing on June 29, 2010, the court found that Gagnon had proved by clear and convincing evidence that he had recovered from his mental disease or defect to such an extent that his release on conditions would no longer create a substantial risk of bodily injury to another person or serious damage to property of another. He was accordingly ordered released subject to a number of stated conditions pursuant to 18 U.S.C. § 4243(f)(2).[1]

In accord with the conditions of release, Gagnon lived with his mother and stepfather and was required to comply with a prescribed regimen of psychiatric care, including antipsychotic medication. However, in 2012 his mental condition deteriorated. His then-treating psychiatrist reported that Gagnon's symptoms were getting worse and that he was at a high risk for decompensating. It was discovered that he had been viewing inappropriate materials over the internet and had become infatuated with another female celebrity. As a result, the probation office filed a

---

[1] An earlier motion by Gagnon to be released on conditions had been denied. *United States v. Gagnon*, No. 2:06CR00011, 2008 WL 4460405 (W.D. Va. Oct. 2, 2008), *aff'd*, 343 F. App'x 867 (4th Cir. 2009) (unpublished).

petition alleging violation of his conditions of release. Gagnon was arrested, and by order entered April 17, 2013, he was committed for a psychiatric examination and report to the court. Following that report and a hearing, the court dismissed the violation petition and released Gagnon, subject to modified conditions of release. Order, Oct. 3, 2013, ECF No. 204.

Gagnon thereafter complied with his conditions of release. As a result, the court removed the condition requiring location monitoring, based on the request of his supervising probation officer. Order, Jan. 19, 2016, ECF No. 205. His only known problem occurred when his probation officer learned through computer monitoring that he had established a Facebook account using a pseudonym. He explained that he did so only to protect his privacy and not for any untoward purpose. The probation officer required him to close the account and the conduct has not been repeated.

Gagnon is presently subject to the conditions of release established in 2013, as modified in early 2016 to remove location monitoring. On July 29, 2016, the court received a letter from Gagnon, requesting that he be removed from his conditions of release. Counsel was appointed for him, who filed an amended motion on his behalf, requesting that the condition requiring computer monitoring be removed and that his situation be reviewed in twelve months and, if deemed

-3-

Case 2:06-cr-00011-JPJ-PMS   Document 226   Filed 03/10/17   Page 3 of 11   Pageid#: 638

appropriate, all further conditions of release be eliminated. Am. Mot., Oct. 14, 2016, ECF No. 212.[2]

By statute, the court has the authority at any time to modify or eliminate conditions of release of an acquittee, after a hearing and employing the same criteria used in determining his release on conditions. 18 U.S.C. § 4243(f). A hearing was held on the requests on February 28, 2017. Gagnon testified, as well as his mother, his supervising probation officer, and his mental health therapist.

II.

As an initial matter, counsel for Gagnon contends that the court has no authority to impose any condition other than the "prescribed regimen" condition expressly permitted by statute. I disagree.

A person found not guilty by reason of insanity may be conditionally discharged from civil commitment if the director of the facility determines, and the court agrees, that the person "has recovered from his mental disease or defect to such an extent that . . . his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would no longer create a

---

[2] It was also requested that Gagnon's therapy sessions be bimonthly rather than monthly, but his therapist testified at the hearing that she had already revised his sessions to bimonthly in November of 2016, with the approval of the probation officer. The court's conditions of release do not specify the frequency of such sessions. Gagnon's current psychiatric regimen requires him to be seen by a nurse practitioner quarterly, the therapist bimonthly, and to receive biweekly injections of an anti-psychotic medication by a nurse.

substantial risk of bodily injury to another person." 18 U.S.C. § 4243(f)(2). Under such circumstances, the court is required by law to "order, as an explicit condition of release, that [the person] comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4243(f)(2)(B).

The statute neither expressly permits nor expressly proscribes the imposition of conditions of release other than compliance with a prescribed treatment regimen. However, multiple courts of appeals have ruled that the language of § 4243(f) is inclusive rather than exclusive and that the statute therefore does not prevent district courts from imposing additional conditions of release.

In *United States v. Jain*, the Seventh Circuit concluded that the exclusive interpretation of the statute advanced by the appellant — that § 4243(f) serves as an "outer limit" on the district court's power to impose conditions of release — was "too restrictive." 174 F.3d 892, 897-98 (7th Cir. 1999). It reasoned that

> Nothing in § 4243 purports to repeal other statutes that entitle district courts to issue orders ancillary to the disposition of cases before them. In fact, § 4243(f)(2)(B) expressly states that the prescribed regimen may be ordered as "*an* explicit condition of release," with the use of the indefinite article ["an"] suggesting that other conditions may be imposed as well.

*Id.* at 898. Furthermore, it noted, "district courts generally are accorded great latitude when determining whether a mentally ill defendant is ready to be released and under what conditions." *Id.* (citation omitted). In determining whether a

-5-

Case 2:06-cr-00011-JPJ-PMS   Document 226   Filed 03/10/17   Page 5 of 11   Pageid#: 640

condition of release is appropriate, then, the court must determine whether "*any* statute permit[s] the condition in question, not just § 4243." *Id.* (emphasis added).

In addition to examining the statute's language, the court also examined its purpose:

> The basic inquiry the court is making throughout § 4243 is whether release of the person would create a substantial risk of bodily injury to another person . . . briefly put, whether the public needs protection from the danger posed by the person's mental illness. In light of that overriding purpose, it would be inappropriate to adopt a crabbed reading of the content of the "prescribed regimen of medical, psychiatric, or psychological care or treatment" that may be imposed as a condition of release.

*Id.* (citations omitted). Ultimately, it held that "a district court does not overstep its authority by establishing conditions of release relating to an insanity acquittee's dangerousness that are not specifically included in the 'prescribed regimen.'" *Id.*

In *United States v. Phelps*, the Ninth Circuit expressly adopted the Seventh Circuit's reasoning in *Jain*, holding that "[t]he close and careful monitoring of [the acquittee]'s activities was reasonable" in light of his mental illness and offense conduct. 283 F.3d 1176, 1186 (9th Cir. 2002). The court also pointed to the fact that discharge proceedings under § 4243(f) are initiated by a medical professional: "the director of the facility in which the acquitted person is hospitalized." *Id.* at 1185. In light of this fact, the court reasoned, it makes sense for § 4243(f) to focus specifically on conditions relating to the acquittee's "medical, psychiatric, and psychological care." *Id.* However, the district court, in issuing its order, must

-6-

consider more than medical care; it "bears the ultimate responsibility of determining whether the conditions of release adequately provide for the safety of the general public." *Id.* It is therefore appropriate, the court of appeals concluded, for the district court to impose additional conditions of release, beyond the prescriptions of the statute.

In addition, in *United States v. Franklin*, the Eighth Circuit adopted the reasoning of *Jain* and *Phelps* in interpreting the materially identical language of 18 U.S.C. § 4246(e), which addresses the conditional discharge of hospitalized convicts. 435 F.3d 885, 889 (8th Cir. 2006). It concluded that "a district court has authority to impose conditions, in addition to a regimen of care or treatment, that are related to the mental disease or defect and reasonably necessary to assure the safety of the community." *Id.*

By contrast, in *United States v. Crape*, the Eleventh Circuit asked whether § 4243(f) "allow[s] the district court to impose ancillary conditions on [an acquittee]'s discharge" and concluded that it does not. 603 F.3d 1237, 1243 (11th Cir. 2010). In drawing this conclusion, the court questioned the logic employed by the Seventh, Eighth, and Ninth Circuits in their respective decisions. First, it noted that despite the Seventh Circuit's reference to "other statutes that entitle district courts to issue orders ancillary to the disposition of cases before them," that court "did not actually identify any other statutes that would expand the court's

-7-

Case 2:06-cr-00011-JPJ-PMS   Document 226   Filed 03/10/17   Page 7 of 11   Pageid#: 642

authority." *Id.* at 1244 (quoting *Jain*, 174 F.3d at 898). Next, the Eleventh Circuit disagreed that "the use of the word *an* in § 4243(f) implies a wide-ranging authority to impose additional, unspecified conditions on an acquittee's discharge." *Id.* Instead, it concluded that the legislature chose the word "an" to (1) "avoid the ungainly construction that would result from the use of [the word 'the']" and (2) avoid "suggest[ing] the possibility of *inexplicit* conditions on an insanity acquittee's discharge." *Id.* Finally, the court believed that a reading of the statute that "allowed district courts to impose additional conditions on an acquittee's discharge would have no natural limits." *Id.* (rejecting the Seventh and Ninth's Circuit's caveat that additional conditions must relate to the acquittee's mental illness on the grounds that there is "no discernible textual basis for that limitation").

At bottom, the Eleventh Circuit based its conclusion on the clear text of the statute, reasoning that it was "not at liberty to rewrite the statute to reflect a meaning [it] deem[ed] more desirable." *Id.* at 1244-45 (internal quotation marks and citation omitted). It rejected the government's contention that "refusing to allow district courts to impose and enforce ancillary conditions of discharge" would have "absurd consequences" and noted that "the legislative history . . . supports a literal reading of the statute." *Id.* at 1245. The court also distinguished between the language of § 4243 and the language of 18 U.S.C. § 3583, which

-8-

provides for conditions of supervised release following any term of imprisonment, noting that while § 3583 expressly permits the court to order additional appropriate conditions, § 4243 contains no such term. *Id.* at 1246.

Regardless of the Eleventh Circuit's analysis, I find the majority view persuasive, and in the absence of any Fourth Circuit precedent to the contrary, I find that conditions of release beyond compliance with a prescribed treatment regimen, but which are reasonably related to the acquittee's dangerousness, are legally permissible under the statute.

III.

I do not find grounds for modifying or eliminating Gagnon's current conditions of release. He does not work or attend school. He spends his time running errands, taking his mother to her medical appointments, taking walks, playing his guitar and writing songs, playing video games, watching television, and surfing the internet. He complains that he is unable to use video gaming devices that connect directly to the internet because the probation office's computer monitoring program does not cover such devices. In addition, he must pay $35 per month for his computer monitoring, which he finds burdensome.[3]

While I understand Gagnon's natural desire to be free from control and surveillance by the court, his history, including that of only a few years ago,

---

[3] Gagnon receives Supplemental Security Income payments from the government because of his disability, as well as Medicaid benefits.

convinces me that the public safety supports all of the current conditions. He has not shown that those conditions are inappropriate or unnecessarily restrict his day-to-day activities. In particular, computer monitoring allows the probation officer to receive early warnings of thought processes by Gagnon that are similar to his earlier dangerous conduct.[4] I credit his probation officer's testimony that computer monitoring is vital to Gagnon's supervision. The financial cost to Gagnon is minimal and while his internet activity is not private, it is not unduly restricted. Although the present monitoring system will not allow Gagnon to use gaming devices separately connected to the internet, I find that to be a minor inconvenience in light of the overall risk involved.

Gagnon's therapist is of the view that it is "imperative that Mr. Gagnon remain in therapy and on his injection consistently to prevent the resurface of symptoms." Herron Letter, Oct. 4, 2016, ECF No. 215. While Gagnon testified at the hearing that he would continue his treatment even if his conditions of release were completely eliminated, I believe that in view of his history and characteristics, the elimination of such a condition of release, along with the other conditions, all of which are related to his mental condition and potential dangerousness, is not now appropriate.

---

[4] The computer monitoring condition was imposed "in order to insure that [Gagnon] does not transmit or receive communications involving the victims or otherwise exhibiting evidence of undue aggression or potential violence." Order ¶ 10, Oct. 3, 2013, ECF No. 204.

For these reasons, the Motion for Early Termination of Supervision (ECF No. 206) and the Amended Motion to Modify Conditions of Release (ECF No. 212) are DENIED.

ENTER: March 10, 2017

/s/  James P. Jones
United States District Judge