## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 2:06CR00011 |
| | ) | |
| **v.** | ) | **OPINION AND ORDER** |
| | ) | |
| **MARC MARK GAGNON,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Nancy C. Dickenson-Vicars, Assistant Federal Public Defender, Abingdon, Virginia, for Marc Mark Gagnon.*

The defendant has moved to be released from the supervision imposed upon him when he was released from civil commitment in 2010 after his 2006 insanity acquittal.  For the reasons set forth hereafter, his request will be denied, although the conditions of his supervision will be substantially modified.

## I.

Marc Mark Gagnon was found not guilty solely by reason of insanity in 2006 by this court and has been either institutionalized or under conditions of supervision ever since.    His history is set forth in fuller detail in prior opinions of this court either denying his release on conditions or following his release, refusing to remove or modify those conditions.  *United States v. Gagnon*, No. 2:06CR00011, 2008 WL 4460405 (W.D. Va. Oct. 2, 2008), *aff'd*, 343 F. App'x 867 (4th Cir. 2009)

(unpublished); *United States v. Gagnon*, No. 2:06CR00011, 2017 WL 1274430 (W.D. Va. Mar. 10, 2017).

In summary, Mr. Gagnon, now 42 years old, was first diagnosed with schizophrenia at the age of 18. He attended community college where he studied computer information systems but his work history is very limited because of his mental illness and he has been receiving social security disability payments since 2001. In 2005 he became obsessed with a well-known actress. He wrote a series of letters to the actress and her husband, threatening to kill them unless they divorced. After he made these threats, he left his home in Alabama to drive to New York City, where the actress was performing. En route, he had a serious car accident in this district and while hospitalized, his obsession and threats became known to the authorities, and he was arrested and subsequently charged in this court with interstate stalking in violation of 18 U.S.C. § 2261A. Eventually, and with the agreement of the parties, the court found Mr. Gagnon not guilty solely by reason of insanity. He was thereafter civilly committed pursuant to 18 U.S.C. § 4243(e).

Following a hearing on June 29, 2010, and considering a Certificate of Conditional Release from the Warden of a Federal Medical Center in which Mr. Gagnon was a patient, the court found that Mr. Gagnon had proved by clear and convincing evidence that he had recovered from his mental disease or defect to such an extent that his release on conditions would no longer create a substantial risk of

bodily injury to another person or serious damage to property of another. He was accordingly ordered released subject to multiple restrictive conditions pursuant to 18 U.S.C. § 4243(f)(2).

In accord with those conditions of release, Mr. Gagnon has lived with his mother and stepfather and has been required to comply with a prescribed regimen of psychiatric care, including the regular injection of antipsychotic medication. However, in 2012 his mental condition deteriorated.[1] His then-treating psychiatrist reported that Mr. Gagnon's symptoms were getting worse and that he was at a high risk for decompensating. It was discovered that he had been viewing inappropriate materials over the internet and had become infatuated with another female celebrity. As a result, the probation office filed a petition alleging violation of his conditions of release. Mr. Gagnon was arrested, and by order entered April 17, 2013, he was committed for a psychiatric examination and a report to the court. Following that report and a hearing, the court dismissed the violation petition and released Mr. Gagnon, subject to modified conditions of release. Order, Oct. 3, 2013, ECF No. 204.

---

[1] In 2012 Mr. Gagnon wrote the court asking to be taken off antipsychotic medication because he felt it was a violation of his right to freedom of religion "when my spiritual beliefs are considered delusional by the court." Letter, Feb. 13, 2012, ECF No. 180. He also expressed the view that the medication was damaging his brain. *Id.*

Mr. Gagnon thereafter complied with his conditions of release.   As a result, the court removed a condition requiring location monitoring, based upon the request of his supervising probation officer.  Order, Jan. 19, 2016, ECF No. 205.  His only known problem thereafter occurred when his probation officer learned through computer monitoring that he had established a Facebook account using a pseudonym.  He explained that he did so only to protect his privacy and not for any untoward purpose.  The probation officer required him to close the Facebook account and the conduct has not been repeated.

## II.

A person found not guilty solely by reason of insanity may be conditionally discharged from civil commitment if the director of the facility determines, and the court agrees, that the person "has recovered from his mental disease or defect to such an extent that . . . his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would no longer create a substantial risk of bodily injury to another person."  18 U.S.C. § 4243(f)(2).  Under such circumstances, the court is required by law to "order, as an explicit condition of release, that [the person] comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4243(f)(2)(B).

Mr. Gagnon is presently subject to the conditions of release established in 2013, as modified in early 2016 to remove location monitoring.

By statute, the court has the authority at any time to modify or eliminate conditions of release of an acquittee, after a hearing and employing the same criteria used in determining his release on conditions.  18 U.S.C. § 4243(f).  On January 20, 2021, Mr. Gagnon, by counsel, filed the present motion to terminate his conditional release and grant him full discharge from further supervision.  An evidentiary hearing was held on the motion on March 25, 2021.  Mr. Gagnon testified, as well as his mother, his stepfather, Mr. Gagnon's present psychiatrist, Anupama Yedla, M.D., and Eric A. Seemann, Ph.D., a psychologist to whom Mr. Gagnon was referred for evaluation by his attorney.  As required, I also considered a statement by Gagnon's principal victim.  18 U.S.C. § 3771(a)(4), (b); Fed. R. Crim. P. 60(a)(3).  The victim opposes Mr. Gagnon's motion, fearing that if he is not supervised and foregoes treatment, he may become unstable again and plan to harm her.  She believes that Mr. Gagnon has her home address.  Letter, Mar. 9, 2021, Gov't's Ex. 1, ECF No. 266 (under seal).

### III.

The following are the court's findings of fact, based upon the evidence and the lengthy historical record of the case.

Mr. Gagnon suffers from paranoid schizophrenia.  Based upon the testimony of Dr. Yedla, which I credit, to remain mentally stable, Mr. Gagnon requires a lifetime of continuous treatment.  Presently, Mr. Gagnon receives an injection of

antipsychotic medication every four weeks, and individual therapy every two to three months. In addition, he sees his psychiatrist every three months for medication management, in which the psychiatrist discusses with her patient the current medication regime and determines if any change is indicated. Without this continuous course of treatment, there is a risk that there will be a reemergence of symptoms.

Dr. Seemann, the defense psychologist, agrees that Mr. Gagnon suffers from the serious mental illness of paranoid schizophrenia and that as a result, continuous treatment is necessary, but is of the opinion that there is "reasonable clinical and scientific certainty" that Mr. Gagnon would voluntarily comply with such treatment if he were released from supervision by the court, and that accordingly he would be no more a risk of violence or threats than the average person. While Dr. Seemann correctly describes Mr. Gagnon's improvements in terms of his maturity and social interaction, such as his current church membership, as well as his recognition of his illness, those are all relatively recent improvements made while Mr. Gagnon has been under treatment.

I do not accept Dr. Seemann's conclusion. I believe that he unduly discounts Mr. Gagnon's history under supervision, in which he reverted to his prior troubling behavior. Mr. Gagnon's mother has always been his closest caretaker, but she failed to recognize his breakdown in 2006 and even now in her testimony at the

hearing indicated a confusion as to the proper steps to take if she felt that her son had abandoned his proper medical treatment.   Moreover, in his written report, Dr. Seemann also partially based his opinion on his view of Mr. Gagnon's legal rights, an opinion beyond his expertise and role.[2]   While I recognize Dr. Seemann's qualifications and experience, I feel he has become a partisan in this case, which lessens my ability to rely upon his crucial finding, which is that Mr. Gagnon will continue necessary treatment on his own.

I conclude that a termination of supervision is not appropriate, but I believe that his continuing improvement justifies substantial modifications of that supervision.  I will modify the supervision to remove all existing conditions except that Mr. Gagnon continue his mental health treatment and that he have no contact

---

[2] In Dr. Seemann's November 10, 2020, written report of his evaluation of Mr. Gagnon, attached as an exhibit to the present motion, Dr. Seemann opined as follows:

> If the only reason, or the only compelling reason, for maintaining Mr. Gagnon on supervision is because of his potential for relapse into psychosis, this sets a different and unreasonable standard for Mr. Gagnon than it does for the thousands of others diagnosed with similar conditions and similar symptoms.  If he were simply convicted of interstate stalking in 2005, there is every reasonable certainty that he would have completed any term of incarceration and supervised release long before 2020.  If the only reason for maintaining Mr. Gagnon on supervision is fear of his lapse into psychosis, this most likely would become an Equal Protection Under the Law argument. In effect, Mr. Gagnon is receiving harsher and longer punishment than other first time interstate stalkers and those with serious mental illnesses who commit crimes.

Renewed Mot. Terminate  Conditional Release & Immediate Release Ex.1 *Psychological Evaluation Update* 11, ECF No. 247.

with the victims.  I do not foreclose the possibility of Mr. Gagnon's release from supervision at some point.  The removal of the other conditions will allow Mr. Gagnon freedom that he has not experienced before and an opportunity to convince the court that full release is appropriate.

IV.

For the foregoing reasons, it is **ORDERED** as follows:

1. The Renewed Motion to Terminate Conditional Release and for Immediate Discharge, ECF No. 244, is DENIED;

2. All existing conditions of release are vacated and removed, effective immediately, <u>excepting</u> the following, which remain in effect:

    A. The defendant must comply with any regimen of mental health prescribed treatment prescribed for him from time to time by a treating psychologist and/or psychiatrist, which regimen must include a continuing administration of antipsychotic medication.  He must consent to full communication and sharing at all times between such medical providers, his parents, and the probation office concerning his condition, care, and treatment. Any failure of the defendant to follow his treatment regime must be reported by his medical provider and/or by his parents immediately to the probation

office. The probation office must provide a copy of this Order

to any medical provider who is providing the defendant with

mental health treatment and to the defendant's parents;

B.  The defendant must not have or attempt any contact, directly

or indirectly, with the victims in this case; and

3.  The Clerk shall provide a copy of this Opinion and Order to the Probation

Office, which in turn shall provide it to the Probation Officer in the

Northern District of Alabama who is supervising Mr. Gagnon.

ENTER:  May 4, 2021

/s/  JAMES P. JONES
United States District Judge